IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN F. SZORADY, SR., | ) | CASE NO. 1:12CV2071 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| TERRY TIBBALS, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner John F. Szorady, Sr., ("Petitioner" or "Szorady") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Szorady is detained at the Mansfield Correctional Institution, having been found guilty by the Cuyahoga County, Ohio, Court of Common Pleas, following a bench trial, of nineteen counts of rape, nineteen counts of sexual battery, one count of pandering sexually-oriented matter involving a minor, one count of intimidation, and one count of possession of a criminal tool. Doc. 10-1, pp. 3-4.[1] *State v. Szorady*, No. CR-09-526119-A (Cuyahoga Cty. Common Pleas Ct. filed March 30, 2010). The trial court merged Szorady's rape and sexual battery convictions and imposed an aggregate 74-year prison sentence. Doc. 10-1, p. 4.

On August 9, 2012, Szorady filed his petition for writ of habeas corpus setting forth four grounds for relief. Doc. 1, pp. 5-9. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Grounds One and Two fail on the merits and Grounds Three and Four are procedurally

---
[1] Doc. page citations are to ECF Doc. page numbers.

1

defaulted. Thus, the undersigned recommends that Szorady's petition for a writ of habeas corpus (Doc. 1) be **DENIED**.

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009). The Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio, set forth the facts underlying Szorady's conviction as follows:[2]

> {¶9} E.S., the victim, testified that during the relevant time period she lived with her mother, grandmother, and brother in Cleveland. E.S.'s mother had a romantic relationship with Szorady and in 2004, after he was released from prison, Szorady moved in with her. E.S. was then 13 years old. E.S. testified that from the time he moved in, Szorady was responsible for "all of the parenting duties" regarding E.S. and her brother, including disciplining them, setting house rules, and determining privileges. E.S.'s mother worked the night shift Sundays through Thursdays at a local factory and was gone between 10:00 p.m. and 8:00 a.m. those days.
>
> {¶10} E.S. testified that she was afraid of Szorady because when he became angry, he was "violent, belligerent, [and] intimidating." He would slap her and her brother, and once grabbed her by her throat. Another time he dragged E.S. out of school by her hair. E.S. testified that Szorady called her names like "bitch, slut, whore, things like that." Szorady also physically abused E.S.'s mother, including slapping her, hitting her with a cabinet door, and biting her nose. E.S. testified that Szorady and her mother used drugs at home, including heroin, crack cocaine, ecstasy, and marijuana.
>
> {¶11} According to E.S., Szorady first raped her on a camping trip in August 2004, when she was 13 years old. Szorady gave her alcohol until she was drunk and passed out in his van. In the morning, she noticed blood in her underwear and Szorady told her that she did "crazy things" when she was drunk.
>
> {¶12} Later that summer, Szorady forced E.S. to ingest heroin until she was incapacitated, and then penetrated her vagina with his finger. He then forced her to perform oral sex on him, and then had intercourse with her.

---

[2] The facts are taken from the Eighth District Court of Appeals' decision *State v. Szorady,* 2011WL 1419624 (Oh. Ct. App. April 14, 2011). Szorady has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

2

{¶13} E.S. testified that Szorady raped her "almost every day" from August 2004 to January 2009, when she finally told her then-boyfriend what had been happening. She said that Szorady would typically rape her while her mother was at work. Around his birthday in November, Szorady would expect "special nights" of sexual activity from E.S. as a gift to him.

{¶14} E.S. testified that her mother typically took a week off work around Christmas, thereby limiting Szorady's access to E.S. Szorady would tell E.S. that he expected special sexual favors from her before her mother's vacation and would rape her for longer periods of time and in a rougher fashion on those nights. In addition, Szorady demanded that E.S. wear special outfits on those occasions and would rape her anally. E.S. testified she was afraid that if she refused his advances, Szorady would become violent with her, her brother, or her grandmother. She testified further that she became pregnant by Szorady in March 2008, and had an abortion.

{¶15} Szorady moved to his own apartment in January 2009. Szorady and E.S.'s mother twice arranged for E.S. to stay at Szorady's home so he could bring her to school in the morning. E.S. testified that on both occasions, Szorady forced her to perform oral sex on him and engage in intercourse. On one of the occasions, he showed her a video file on his computer that depicted him and E.S. having sex.

{¶16} After Szorady moved out, E.S. tried to distance herself from him in order to avoid his advances. But Szorady would call her, text her, and leave voice mail messages expressing his displeasure that she was avoiding him. He threatened to give photographs of him and E.S. having sex to her school, her grandmother, and her boyfriend.

{¶17} One evening in February 2009, Szorady became unhappy after learning that E.S. was at her boyfriend's house and began texting and calling her incessantly. When E.S.'s boyfriend told her that Szorady was acting more like a jealous boyfriend than a stepfather, E.S. broke down and told him that Szorady had been raping her for years. The boyfriend contacted a school counselor, who called the police.

{¶18} The police subsequently searched Szorady's home, where they found computer files that showed Szorady raping E.S. In addition, they found numerous text messages to E.S. on Szorady's cell phone. In one, he told her what type of sex he expected that night; in another, he thanked her for the sex; and in others, he threatened to release the videos to various persons if she refused to have sex with him.

*State v. Szorady*, 2011 WL 1419624, at *2-3 (Ohio Ct. App. April 4, 2011).

## II. Procedural Background

A. **State Conviction**

On July 13, 2009, a Cuyahoga County Grand Jury indicted Szorady on twenty-nine first degree felony rape charges, O.R.C. 2907.02(A)(2), with a notice of prior conviction specifications, repeat violent offender specifications, and sexually violent predator specifications; twenty-nine third-degree felony sexual battery charges, O.R.C. 2907.03(A)(5), with notice of prior conviction specifications, repeat violent offender specifications, and sexually violent predator specifications; one second-degree felony pandering sexually-oriented matter involving a minor charge, O.R.C. 2907.322(A)(1), with a property forfeiture specification; one third-degree felony intimidation of crime victim or witness charge, O.R.C. 2921.04(B); one fifth-degree felony possessing criminal tools charge, O.R.C. 2923.24(A), with a property forfeiture specification; and one second-degree felony corrupting another with drugs charge, O.R.C. 2925.02(A)(4)(a). Doc. 10-1, pp. 22-81.

The trial court appointed Szorady counsel. Szorady had difficulty with his court-appointed counsel, as described by the Ohio Court of Appeals:

> {¶ 4} Szorady's court-appointed counsel withdrew in May 2009 and the court appointed new counsel for Szorady; one month later, counsel asked to withdraw due to conflicts with Szorady. The trial court again appointed new counsel for Szorady; after two months that lawyer moved to withdraw because Szorady had written letters that contained allegations impugning the lawyer's integrity. The court granted counsel's motion to withdraw and appointed another lawyer for Szorady. Shortly before trial, Szorady wrote to the judge asking to waive his right to counsel. After a hearing, Szorady withdrew his request and the matter proceeded to a jury trial.
>
> {¶ 5} The trial court dismissed several counts at trial pursuant to Crim.R. 29. The jury found Szorady guilty of the remaining counts, but the trial court declared a mistrial prior to sentencing upon learning that the jury had mistakenly considered an improper exhibit during deliberations.
>
> {¶ 6} After trial, counsel for Szorady moved to withdraw because Szorady had filed a grievance against him. In addition, Szorady filed a motion to waive his right to counsel and represent himself at the rescheduled trial. In his motion, Szorady acknowledged that the court had appointed four lawyers for him, but asserted that all four lawyers were, for various reasons, deficient and that "the only way a valid and meaningful defense will be prepared and presented in his behalf is if he does it himself."

{¶ 7} After a hearing, the trial court granted Szorady's motion. Subsequently, upon being advised that the Ohio Supreme Court had denied Szorady's affidavit of disqualification against the judge, the trial court again set the matter for trial. Szorady waived his right to a jury trial and the case was heard by the judge. Szorady represented himself during trial, with the lawyer who represented him at the first trial serving as advisory counsel.

{¶ 8} At the close of the State's evidence, the trial judge dismissed four counts of rape (counts 1, 2, 25, and 26), four counts of sexual battery (counts 30, 31, 52, and 53), one count of corrupting another with drugs (count 62), and all of the sexually violent predator specifications. The court subsequently found Szorady not guilty of counts 3, 8, 9, 12, 13, and 16 (rape), and counts 32, 33, 36, 37, 46, and 47 (sexual battery), and guilty of the remaining counts of rape, sexual battery, pandering, intimidation, and possession of a criminal tool, as well as the repeat violent offender specifications attached to the rape and sexual battery convictions. The trial court merged the sexual battery counts with the corresponding rape counts and sentenced Szorady to a total of 74 years incarceration; it also declared him to be a Tier III sex offender. This appeal followed.

*Szorady*, 2011 WL 1419624, at *1-2.

### B. Direct Appeal

On April 28, 2010, Szorady, through counsel, timely appealed to the Eighth District Court of Appeals. Doc. 10-1, p. 96. In his brief, he presented four assignments of error:

1. The trial court erred in failing to insure that Mr. Szorady's waiver of counsel was knowingly, intelligently, and voluntarily made. 6th and 14th Amendments to the United States Constitution, Section 10, Article I of the Ohio Constitution.

2. The rape shield law as applied in this case violated Mr. Szorady's Sixth Amendment right of confrontation. 6th and 14th Amendments to the United States Constitution, and Section 10, Art. I, of the Ohio Constitution.

3. The trial court erred when it entered a judgment of conviction in the absence of sufficient evidence to establish force or threat of force, and when the manifest weight of the evidence did not support a finding that that element had been established beyond a reasonable doubt. 5th and 14th Amendments to the United States Constitution, and Sections 10 and 16, Art. I, of the Ohio Constitution.

4. The trial court erred by not making the findings of fact specified by R.C. 2929.14(E)(4), necessary to overcome the presumption favoring concurrent sentences in R.C. 2929.41(A).

Doc. 10-1, pp. 99-100. On April 14, 2011, the state Court of Appeals affirmed Szorady's convictions and sentences. Doc. 10-1, p. 5.

### C. Ohio Supreme Court Appeal

On May 30, 2011, Szorady, through counsel, timely appealed to the Ohio Supreme Court. Doc. 10-1, p. 190. He presented two assignments of error:

> 1. When a defendant moves to proceed *pro se* at trial, and explicitly puts the trial court on notice that appointed counsel's deficiencies were the sole cause of that motion, the trial court must conduct an inquiry regarding the voluntariness of the defendant's request. Doc. 10-1, p. 194.
>
> 2. When questioning by the State places the origin of the complaining witness' pregnancy at issue, the rape shield law does not bar defense inquiries regarding the possibility that another individual may have impregnated the witness.

Doc. 10-1, p. 194. On September 21, 2011, the Ohio Supreme Court denied Szorady's leave to appeal and dismissed it as not involving any substantial constitutional question. Doc. 10-1, p. 228.

### D. Post-conviction Petition to Vacate or Set Aside Judgment of Conviction or Sentence

On December 8, 2010, while his direct appeal was pending, Szorady, proceeding *pro se*, untimely filed a petition to vacate or set aside judgment of conviction or sentence in the state trial court. Doc. 10-1, p. 229. He raised three errors in his petition:

> 1. Abuse of discretion by trial court Judge John J. Russo. Was denied meaningful defense through witnesses and time to prepare defense *pro-se*.
>
> 2. Abuse of discretion by denying petitioner his right to an impartial jury with prejudicial statements that jury would hear if petitioner would choose jury trial. Petitioner was denied impartial jury in first trial which resulted in mistrial and judge told petitioner if he chose to take jury trial in 2nd trial that the same statement would be heard by jury and that the jury would know petitioner was in jail.
>
> 3. Abuse of discretion with the denial into evidence subpoenaed text messages from [E.S.]'s phone showing she was not being honest with the courts. Judge Russo denied the complete copy of [E.S.]'s text messages into evidence which impeaches [E.S.] on a number of issues as well as raises possible misconduct by Prosecutor Jesse Conaco (sic).

6

Doc. 10-1, pp. 231-233. On February 16, 2011, the trial court dismissed Szorady's petition because it was untimely and subject to *res judicata*. Doc. 10-1, p. 254.

### E. Application to Reopen Direct Appeal

On July 15, 2011, Szorady, *pro se*, filed an untimely application for reopening his direct appeal based on an ineffective assistance of appellate counsel claim. Doc. 10-1, p. 255. He alleged that his appellate counsel was ineffective for not raising the following errors on direct appeal:

> 1. The defendant states that the trial court abused its discretion and violated the constitutional rights of the defendant afforded to him through the fourteenth amendment of the U.S. constitution and art.1 sec. 10 of the Ohio constitution when the court denied the defendant's request for a continuance on March 8, 2010.
>
> 2. The defendant states that he suffered bias and or prejudice by the appointed trial judge, John J. Russo, by and through the constant and continued abuse of discretions made by the judge throughout the proceedings in the case no. 522235 and case no. 526119 which went to trial as the judge being the trier of facts and resulted in multiple convictions and a sentence imposed by this judge that has the defendant serving the rest of his life in a Ohio prison.

Doc. 10-1, pp. 256, 258. On October 4, 2011, the Ohio Court of Appeals denied Szorady's application because it was untimely and Szorady failed to show good cause for his untimely filing. Doc. 10-1, pp. 285, 289.

### F. Federal Habeas Petition

On August 9, 2012, Szorady, *pro se*, filed a petition for a writ of habeas corpus. He listed the following four grounds for relief:

> **Ground One:** The trial court erred in the finding to insure that the defendant, John F. Szorady S[r.], waived his right to counsel knowingly, intelligently and voluntarily.
>
> **Ground Two**: The trial court erred and misused the Rape shield law in this case which violated the defendant's, John F. Szorady Sr., right to confront witnesses who testify against him at trial.
>
> **Ground Three**: The trial court erred and rendered a judg[]ment of conviction in the absence of sufficient evidence to establish the element of force or threat of force, and

7

>when the manifest weight of evidence did not support the finding that the element had even been established beyond a reasonable doubt.
>
>**Ground Four**: The trial court erred by not making a finding of facts specified by the Ohio Revised Code 2929.14(E)(4) necessary to overcome the presumption favoring concurrent sentences in the Ohio Revised Code 2929.14(A).

Doc. 1, p. 14. On February 21, 2013, Respondent filed a Return of Writ. Doc. 10. Respondent argues that all Szorady's grounds lack merit and that grounds three and four are procedurally defaulted. Doc. 10, pp. 19-36. On July 22, 2013, Szorady filed a Traverse to the return of writ. Doc. 17.

### III. Law

#### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Szorady's habeas petition because he filed it after the effective date of the AEDPA. 28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Under the AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams,* 460 F.3d at 806.

8

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and

9

independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under §2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved a reasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state

11

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harington*, 562 U.S. at 786-787.

### IV. Claim Analysis

#### A. Claims Overview

Szorady sets forth four grounds for relief in his petition. Doc. 1, pp. 14-26. Respondent argues that all Szorady's grounds fail on the merits. Doc. 10, pp. 19-36. Respondent also argues that Szorady's third and fourth grounds are procedurally defaulted. Doc. 10, pp. 26-36. For the reasons that follow, the undersigned agrees with Respondent and concludes that Szorady's first and second grounds are without merit and that his third and fourth grounds are procedurally defaulted.

##### 1. Ground One fails on the merits

In Ground One, Szorady argues that the trial court erred because it did not ensure that his waiver of counsel was done knowingly, intelligently, and voluntarily. Doc 1, p. 14. For a waiver of the right to counsel and invocation of the right of self-representation to be valid, two conditions must be satisfied. First, the accused must "knowingly and intelligently" waive the right to counsel after having been apprised of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). Second, a defendant's self-representation request must be made clearly and unequivocally. *Raulerson v. Wainwright*, 469 U.S. 966, 969-970 (1984).

Here, conditions for a valid waiver were satisfied. To recap: Szorady was represented by four different attorneys leading up to his jury trial. He was represented by his fourth attorney

12

during his jury trial that was later declared a mistrial by the trial court. Thereafter, Szorady, with full knowledge of the evidence against him, filed a written motion, *pro se*, to "exercise constitutional rights to defend self and waive rights to counsel." Doc. 10-1, p. 86. In his memorandum in support of his motion, Szorady described his dissatisfaction with his four court-appointed attorneys, explained that the only way to establish a "valid and meaningful defense" is if he represents himself, and referenced his constitutional right to counsel and self-representation. Doc. 10-1, p. 89.

The trial court discussed Szorady's motion extensively on the record. Doc. 10-2, pp. 5-18. The trial court observed that Szorady heard and saw all the evidence presented against him during the jury trial. Doc. 10-2, p. 6. The trial court questioned Szorady about his age (46), education (associate degree), language barriers (none), and whether he was ever declared incompetent (no). Doc. 10-2, pp. 6-8. The court informed Szorady that the rules of evidence would still apply to his case even though he may not have knowledge of those rules; that the trial court may not assist him during trial; that the court would keep Szorady's fourth attorney on to assist Szorady; and that representing himself may cause a jury to be negatively impacted.[3] Doc. 10-2, pp. 8-9. Szorady stated that he understood all these things. Doc. 10-2, pp. 8-9.

The trial court went through the numerous charges in the case against Szorady. Doc. 10-2, pp. 10-13. The court stated what the maximum penalties were, including life in prison. Doc. 10-2, pp. 10-13. Szorady stated that he understood these penalties. Doc. 10-2, pp. 11, 13. The court explained to Szorady his obligation to preserve an issue for appeal; Szorady stated that he understood. Doc. 10-2, pp. 11-12. The court asked Szorady if he still wanted to represent himself and Szorady replied "yes." Doc. 10-2, pp. 11, 14. The court read into the record the Voluntary Waiver of Right to Counsel form and Szorady signed and executed it. Doc. 10-2, pp.

---

[3] Szorady later waived his right to a jury trial and the case was tried to the bench. Doc. 1-3, pp. 11-12.

13

16-18; Doc. 10-1, p. 190. The trial court found Szorady to have knowingly, voluntarily, and intelligently, with a full understanding of his rights, waived his right to counsel. Doc. 10-2, p. 18. Thereafter, prior to trial, the court reminded Szorady four more times that he had a right to counsel and asked Szorady four more times whether he still wanted to represent himself. Doc. 10-2, pp. 28-29, 39-40, 43-44, 48-49. All four times Szorady responded that he understood and that he still wished to represent himself. Doc. 10-2, pp. 28-29, 39-40, 43-44, 48-49.

With respect to Szorady's claim on direct appeal that the trial court did not ascertain that his waiver was knowingly, intelligently, and voluntarily made, the state Court of Appeals stated:

> {¶ 20} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* 91975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
>
> {¶ 21} However, "courts are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right, including the right to be represented by counsel." *State v. Dyer* (1996), 117 Ohio App.3d 92, 95, 689 N.E.2d 1034. "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson*, paragraph two of the syllabus. " 'To be valid, such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter.'" *Gibson* at 406, 345 N.E.2d 399, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309.
>
> {¶ 22} The record demonstrates that the trial judge reviewed the charges and all possible penal[]ties with Szorady. The trial court also informed Szorady that his former lawyer would act as advisory counsel for him during trial and discussed the limitations of advisory counsel's role. The trial court also advised Szorady of how the trial would be handled and his appeal rights. Szorady stated that he understood the charges and possible penalties, the role of advisory counsel, and that he would be bound to the rules of evidence, but still wished to represent himself. In light of the foregoing, we find that Szorady knowingly, voluntarily, and intelligently waived his right to counsel.
>
> {¶ 23} Szorady asserts that the trial court's colloquy was deficient because the judge made no effort to determine that his waiver was truly voluntary, rather than forced by

14

legitimate concerns regarding his appointed counsel. But the record is clear that Szorady did not, in fact, have legitimate concerns about his appointed counsel. He found fault with all four lawyers the court had appointed for him, forcing three of his lawyers to ask to withdraw, and, as evidenced by his affidavit of prejudice, was also unhappy with the trial judge. The trial judge was well aware that Szorady's concerns about defense counsel were not valid and, hence, there was no reason to inquire about the legitimacy of Szorady's concerns. Appellant's first assignment of error is therefore overruled.

Szorady, 2011 WL 1419624, at *3-4.

Szorady argues that the trial court erred because it did not engage in an "in-depth colloquy into exactly why the waiver was requested." The Court disagrees. As the state Court of Appeals found, the trial court was well aware of Szorady's numerous complaints about his four court-appointed attorneys. Furthermore, Szorady's dissatisfaction with his court-appointed attorneys does not change the fact that Szorady stated on the record that he clearly understood that he was voluntarily waiving his right to counsel and wished to proceed representing himself.[4] Thus, the state courts properly applied the rule in *Faretta* when determining that Szorady knowingly and intelligently waived his right to counsel after having been apprised of the dangers and disadvantages of self-representation and that Szorady's self-representation request was made clearly and unequivocally. 422 U.S. at 835; Raulerson, 469 U.S. at 969-970. Accordingly, Ground One fails on the merits.

### 2. Ground Two fails on the merits

In Ground Two, Szorady argues that the trial court misused Ohio's rape shield law, Ohio Rev. Code § 2907.02(D), violating his right to confront the victim, E.S., who testified against him at trial. Doc. 1, p. 14. Specifically, Szorady objects to testimony regarding E.S.'s

---

[4] Moreover, courts have found that a defendant who repeatedly rejects all options but self-representation forfeits his right to counsel. *See, e.g.,* King v. Bobby, 433 F.3d 483, 493 (6th Cir. 2006) (defendant attempting to manipulate the system by refusing to work with his attorney, refusing to hire a new attorney, and refusing to proceed without an attorney waived his right to counsel); U.S. v. Sanchez-Garcia, 685 F.3d 745, 752 (8th Cir. 2012), *cert. denied*, 133 S.Ct. 2046 (2013) (defendant who refused to accept a court-appointed attorney or to proceed without counsel necessarily chose self-representation); U.S. v. Sutcliffe, 505 F.3d 944, 956 (9th Cir. 2007) (defendant went through five court-appointed attorneys who were forced to withdraw because of defendant's conduct; court found defendant waived his right to counsel).

15

pregnancy.  E.S. testified that she discovered she was pregnant by Szorady in January 2008 and that she had an abortion.  Doc. 10-4, pp. 30-31.  Szorady asserts that he should have been able to cross-examine E.S. with respect to her other sexual activity in order to call her credibility into question.  Doc. 17, pp. 32-34.

The Confrontation Clause protects a defendant's right to cross-examine witnesses. [Delaware v. Fensterer, 474 U.S. 15, 20 (1985)](#).  This right is not absolute—the Constitution guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *[Id](#)*. (emphasis in original). Moreover, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  [*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)](#).

> Ohio's rape shield law provides,
>
> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

[R.C. § 2907.02(D)](#).  The provision "essentially prohibits the introduction of any extrinsic evidence pertaining to the victim's sexual activity." [*State v. Williams*, 487 N.E.2d 560, 561 (Ohio 1986)](#).  In [*State v. Gardner*, 391 N.E.2d 337, 340 (Ohio 1979)](#), the Ohio Supreme Court explained,

> Several legitimate state interests are advanced by the shield law. First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process.

*Id*. When testimony barred by the rape-shield law is sought to be used only to challenge the witness' general credibility, there is no confrontation-clause violation. *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 596 (6th Cir. 2012) (citing *Boggs v. Collins*, 226 F.3d 728, 737-738 (6th Cir. 2000)).

During trial, the state asked E.S. about her pregnancy. The state inquired about her sexual activity during the time frame she conceived—from her last menstrual cycle in December 2007 to the time she discovered she was pregnant in late January 2008. Docs. 10-4, p. 28; 10-5, p. 13. E.S. stated that during that time she did not have sex with anyone but Szorady. Doc. 10-4, p. 30. Szorady sought to cross examine E.S. about her sexual activity any time prior to the time she became pregnant. Doc. 10-4, pp. 180-185. The trial court precluded Szorady from questioning E.S. about all prior sexual history per Ohio's rape shield law, limiting him instead to questioning about the time period within which she became pregnant. Doc. 10-5, pp. 10-16.

In his Traverse, Szorady argues that he was denied "his line of questioning regarding E.S.'s abortion...even though there was evidence which showed E.S. was not honest with her statements and testimony in the first trial." Doc. 17, p. 32. He claims that text messages from E.S.'s phone indicate that she was sexually active with another partner at the time she became pregnant and, thus, "prove she was not honest" and "directly goes against her credibility." Doc. 17, p. 34 (explaining that "[t]his case is a battle of credibility between E.S. and the applicant.").

Szorady was given an opportunity to confront E.S. about her sexual activity during the time frame that she became pregnant. Thus, his right to confront E.S. as to the identity of the individual who impregnated her was not violated. Szorady also fails to state a confrontation-clause violation because he sought to use the prohibited testimony only as a challenge to E.S.'s general credibility. *See Jordan*, 675 F.3d at 596 (no confrontation-clause violation when the

17

testimony barred by the rape-shield law challenges only the witness' general credibility); *Szorady*, 2011 WL 1419624, at \*5 ("Here, it is apparent that Szorady wanted to question E.S. about other sexual partners merely in an attempt to impeach her credibility" and explaining that "evidence of sexual activity offered merely to impeach the credibility of the witness is not material to a fact at issue in the case and must be excluded."). Moreover, Szorady was charged and convicted of raping and sexually abusing E.S. numerous times lasting over four years; he was not charged with or convicted of impregnating her and, therefore, the identity of the person who impregnated her is not material to a fact at issue in the case. *See* R.C. § 2907.02(D) (if evidence is admitted it must be "only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."); Doc. 10-5, p. 15 (trial court noting that the abortion is not an issue charged in the case). Accordingly, Ground Two fails on the merits.

### 3. Grounds Three and Four are procedurally defaulted

In Ground Three, Szorady argues that the trial court convicted him without sufficient evidence to establish the element of force or threat of force, and that the manifest weight of evidence did not support the finding that the element had been established beyond a reasonable doubt. Doc. 1, p. 14. Specifically, Szorady claims that the video recording used to convict him of rape does not show that he used force. Doc. 17, p. 21-22. In Ground Four, Szorady argues that the trial court failed to give reasons why it applied consecutive terms of incarceration rather than concurrent terms to his sentence. Doc. 1, p. 14.

Szorady raised Grounds Three and Four on direct appeal but failed to raise them on appeal to the Ohio Supreme Court. Doc. 10-1, pp. 100, 194. These grounds, therefore, are procedurally defaulted, as Szorady concedes. Doc. 17, p. 22; *O'Sullivan*, 526 U.S. at 848 (procedural default occurs when a petitioner fails to pursue a claim through the state's ordinary

18

appellate review procedure).  Szorady does not argue cause to excuse this default; moreover, because there is no right to counsel for a secondary appeal to the Ohio Supreme Court, any claim that his appellate counsel was ineffective in failing to raise the issues on appeal to the Ohio Supreme Court would be unavailing.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)("the right to counsel extends to the first appeal of right, and no further."); Lopez v. Wilson, 426 F.3d 339, 352 (6th Cir. 2005).  Accordingly, Grounds Three and Four are procedurally defaulted.[5]

## V. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas petition be **DENIED**.

Dated: February 17, 2015

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See United States v. Walters, 638 F.2d 947 (6th Cir. 1981); see also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

---

[5]  Additionally, Szorady's argument with respect to the manifest weight of the evidence contained in Ground Three is not cognizable and, thus, not reviewable by this Court.  See Wilson v. Corcoran, 562 US 1, 131 S.Ct. 13, 16 (2010) (Federal habeas corpus relief is available only to correct federal constitutional violations); Ross v. Pineda, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing State v. Thompkins, 678 N.E.2d 541 (Ohio 1997), and, thus, not cognizable in a federal habeas petition).